**KOLLER LAW LLC**  *Counsel for Plaintiff*
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FREDERICK MEAD**<br>**607 Tasker St., Apt. D**<br>**Philadelphia, PA 19148**<br><br>       **Plaintiff,**<br><br>    v.<br>**1651 INC. D/B/A CANTINA LOS CABALLITOS.**<br>**1651 E Passyunk Ave**<br>**Philadelphia, PA 19148**<br><br>**AND**<br><br>**SIMONS, FRANK & CO**<br>**52 S. 2nd Street**<br>**Philadelphia, PA 19106**<br>              **Defendants.** | **Civil Action No.**<br><br><br>**Complaint and Jury Demand** |

**CIVIL ACTION**

Plaintiff, Frederick Mead (hereinafter "Plaintiff"), by and through Plaintiff's attorney, Koller Law, LLC, bring this civil matter against 1651 Inc. d/b/a Cantina Los Caballitos and Simons, Frank & Co (hereinafter "Defendant"), for violations pursuant to Family and Medical Leave Act ("FMLA") of 1993. In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above-captioned address.

3. Upon information and belief, Defendant Simons, Frank & CO. owns restaurant 1651 Inc. d/b/a Cantina Los Caballitos located 1651 E Passyunk Ave, Philadelphia, PA 19148, is headquartered at 52 S 2nd St Philadelphia, PA 19106, and owns multiple other restaurants in the Philadelphia Area.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## MATERIAL FACTS

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. In or around May 2017, Defendant hired Plaintiff as a Server and/or Bartender.

13. Plaintiff is diagnosed with bi-polar disorder.

14. Defendant was aware that Plaintiff had bi-polar disorder.

15. On or around July 10, 2020, Plaintiff had a bi-polar episode. The episode happened at work.

16. One or around July 11, 2020, after aforementioned the episode, Plaintiff went to the hospital and was hospitalized for ten (10) days.

17. Plaintiff's fiancé Jerusha Paige (hereinafter "Jerusha") also worked for Defendant. While she was at work for Defendant, Jerusha told Defendant that Plaintiff was in the hospital due to his bipolar disorder.

18. Said medical condition is a serious health condition within the meaning of the FMLA. Plaintiff also required continuing treatment such as hospitalization.

19. On or around July 22, 2020, Plaintiff checked out of the hospital and his medication treatment stabilized. Plaintiff returned to work.

20. While Plaintiff was at work, Defendant's HR Ashley Thomas (hereinafter "Thomas") told Plaintiff that he could not work at the restaurant if he had a bi-polar episode at work. General Manager Rachel Harvey (hereinafter "Harvey") and Event Coordinator Amy Dimarco (hereinafter "Dimarco") heard Thomas saying this.

21. Thomas did not provide Plaintiff any information regarding his protected FMLA leave rights.

22. After Plaintiff's conversation with Thomas, Plaintiff continued to work.

23. On or around February 20, 2022, Plaintiff had another bi-polar episode and was hospitalized again. Plaintiff's episode did not happen at work.

24. On the same day, he left the hospital and went to Defendant's restaurant to eat. Plaintiff was not working that day. While at Defendant's restaurant, Harvey and Assistant Manager Rachel Haxby (hereinafter "Haxby") recommended that he go back to the hospital. Harvey and Haxby told Plaintiff not to worry about his shifts and that another employee would cover his shifts. Plaintiff agreed and left the restaurant to go back to the hospital.

25. After receiving the aforementioned approval from Harvey and Haxby, Plaintiff checked himself back into the hospital. He understood that any absences from work would be excused.

26. On February 26, 2023, while Plaintiff was still in the hospital, Thomas called Jerusha. Thomas told Jerusha that Defendant was going to terminate Plaintiff. Thomas did not provide

a reason. On the same day, Jerusha called Plaintiff while he was in the hospital and relayed that information.

27. On March 3, 2022, Plaintiff was released from the hospital.

28. On March 5, 2022, Plaintiff called Thomas. Plaintiff spoke to Thomas about his health and that he was just released from the hospital. Plaintiff also told Thomas that Harvey and Haxby told him that his shifts would be covered and excused while he was hospitalized out.

29. While on the call, Thomas called Plaintiff's hospitalization a "vacation." Thomas stated to Plaintiff "we told you that this can't happen again. You should've taken a vacation." Thomas then terminated Plaintiff on the phone call and said that there was nothing she could do.

30. Dimarco told Plaintiff that no other employees were aware that Defendant intended to terminate him once he returned from the hospital. She also told Plaintiff that it was "busy season" and that his termination did not make sense because the restaurant needed the help.

31. Defendant knowingly failed to provide Plaintiff with any information regarding his job-protected FMLA rights.

32. Defendant was eligible for FMLA leave.

33. Defendant interfered with Plaintiff's right to a medical leave of absence under the FMLA, and retaliated against Plaintiff after Plaintiff engaged in FMLA-protected activity of requesting leave that should have been covered under the FMLA.

34. Defendant's conduct was willful or with reckless disregard of Plaintiff's statutorily protected rights under the law.

## COUNT I
## INTERFERENCE IN VIOLATION OF
## THE FAMILY AND MEDICAL LEAVE ACT

35. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

36. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

37. Defendant is an employer covered by the FMLA under 29 U.S.C. §2601 et seq. because it is a private business that employed fifty or more employees for each working day for at least twenty workweeks in the year prior to Plaintiff's leave.

38. Plaintiff is an FMLA-eligible employee because he was employed by Defendant for approximately 6 years prior to requesting FMLA leave and had been employed by Defendant for over 1,250 hours in the twelve months prior to her request.

39. Plaintiff is a "qualified individual with a disability" as that term is defined under the FMLA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

40. Plaintiff was entitled to benefits under the FMLA.

41. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA leave to care for his serious health condition.

42. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

43. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's excuse absences and leave that should have been covered under the FMLA.

44. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

45. As a result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff suffered adverse employment action, including, but not limited to termination.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II
## RETALIATION IN VIOLATION OF
## THE FAMILY AND MEDICAL LEAVE ACT

46. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

47. Plaintiff engaged in FMLA-protected activity when Plaintiff requested an excused absence and leave that should have been covered under the FMLA.

48. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

49. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Frederick Mead, requests that the Court grant him the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the FMLA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                                  **RESPECTFULLY SUBMITTED,**

                                  **KOLLER LAW, LLC**

Date: August 22, 2023                **By** *:/s/ David M. Koller*
                                               David M. Koller, Esquire (90119)
                                               Jordan D. Santo, Esquire (320573)
                                               2043 Locust Street, Suite 1B
                                               Philadelphia, PA 19103
                                               T: 215-545-8917
                                               F: 215-575-0826
                                               davidk@kollerlawfirm.com
                                               jordans@kollerlawfirm.com

                                               *Counsel for Plaintiff*